DECISION
{¶ 1} Relator, Employee Leasing Services, Inc. ("relator"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial *Page 2 
Commission of Ohio ("commission") to vacate its order granting respondent Francis Amissah ("claimant") a scheduled loss award pursuant to R.C. 4123.57(B).
 {¶ 2} Pursuant to Civ. R. 53 and Loc. R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission did not abuse its discretion and recommended that this court not issue the requested writ of mandamus. Relator filed objections to the magistrate's decision, and both the commission and claimant filed memoranda opposing the objections. This cause is now before the court for a full review.
 {¶ 3} Claimant, a steelworker, sustained a crushing injury to his left fifth finger on July 5, 2005, while in the course and scope of his employment with relator. His claim has been allowed for left fifth finger open wound with tendon; crushing injury left fifth finger; dermatitis left; frozen left shoulder; frozen left elbow; reflex sympathetic dystrophy of the left fourth and fifth fingers; and total stiffness (ankylosis) of two or more fingers. Claimant moved for a scheduled loss award based on the loss of use of his left fourth and fifth fingers; he also requested an award for loss of his left hand based on the loss of use of two or more fingers which, claimant contends, exceeds the normal handicap for his position as a steelworker.
 {¶ 4} Dr. Richard M. Ward's report stated that claimant has almost no ability to move the joints of his left hand due to severe reflex sympathetic dystrophy, which equates to a total loss of use of the left hand. Dr. Naomi Waldbaum's report stated that claimant suffers from severe reflex sympathetic dystrophy and complex regional pain disorder of the left hand and has totally lost mobility in his left hand. In his report following a file *Page 3 
review, Dr. Ronald J. Bloomfield stated that the claimant suffered nerve damage affecting his entire left hand, he has lost the ability to use his left fourth and fifth fingers due to reflex sympathetic dystrophy, he is unable to use his left hand, and the loss of function is in excess of the normal handicap for claimant's position. Upon her file review, Dr. Lynn Richardson opined that claimant suffers from severe deformity, ankylosis, pain and reflex sympathetic dystrophy resulting in the total loss of use of his left hand, and the foregoing conditions are causally related to the industrial injury.
 {¶ 5} Section 4123.57(B) of the Ohio Revised Code provides, inter alia, "[i]f the claimant has suffered the loss of two or more fingers by amputation or ankylosis and the nature of the claimant's employment in the course of which the claimant was working at the time of the injury or occupational disease is such that the handicap or disability resulting from the loss of fingers, or loss of use of fingers, exceeds the normal handicap or disability resulting from the loss of fingers, or loss of use of fingers, the administrator may take that fact into consideration and increase the award of compensation accordingly, but the award made shall not exceed the amount of compensation for loss of a hand."
 {¶ 6} The commission granted claimant's scheduled loss award for his left hand, finding that "the claimant has two or more fingers with total stiffness of (ankylosis) and finds this ankylosis has been sustained due to this 07/05/2005 industrial injury. The Staff Hearing Officer awards a total loss of use via ankylosis for the left hand due to the ankylosis of these fingers and the nature of the claimant's work as a laborer." (Stip. Rec. "CC") *Page 4 
 {¶ 7} Relator seeks a writ of mandamus, arguing that the commission abused its discretion in awarding compensation for a total loss of use of the left hand based on claimant's status as a "laborer," without a more detailed analysis of claimant's particular employment position and how the loss of use of two fingers exceeds the normal handicap for that position. The magistrate disagreed, noting that the cases relator cites for support of its argument all involved claimants who had returned to their former positions of employment, which required more analysis to support a finding that the injured worker had an excessive disability or handicap as a result of the loss.
 {¶ 8} The magistrate pointed out that Dr. Maria Armstrong opined that claimant cannot return to his position in the steel industry as a "chain man" because the job requires full use, dexterity, and strength of his left hand. The magistrate also noted that the commission relied on Dr. Richardson's reports, in which the doctor explained the "chain man" position and how claimant can no longer perform it.
 {¶ 9} Relator lodges three objections to the magistrate's decision. First, relator argues that, contrary to the magistrate's conclusion, the commission is required to engage in an analysis of the injured worker's job functions and how the nature of that employment renders the disability excessive of normal. Relator argues that because neither inability to return to the former position nor loss of use of two fingers automatically equates to an excessive disability, the commission must explain how it analyzed the injured worker's particular situation in concluding that his disability was excessive. In support of this objection, relator cites five decisions of the commission in other cases, in which the hearing officer provided some explanation of his or her analysis of the vocational aspect of the decision. Relator cites no case law from this court or from the *Page 5 
Supreme Court of Ohio in support of its argument, and our research finds no such support in precedent. Relator simply reasserts the same argument it made before the magistrate. For the reasons cogently stated by the magistrate, the first objection is overruled.
 {¶ 10} In its second objection, relator argues that the magistrate erred in "searching" the record for some evidence to support the commission's order, even though the commission did not explicitly rely upon the evidence that the magistrate noted. However, as the claimant points out in his memorandum contra, the commission does not have to cite to specific evidence in support of its determination regarding excessive disability, because the commission is the exclusive evaluator of disability. State ex rel. Jackson v. Indus. Comm., 79 Ohio St.3d 266,1997-Ohio-152, 680 N.E.2d 1233. Accordingly, the second objection is overruled.
 {¶ 11} In its third objection, relator argues that the magistrate erred in making "assumptions" regarding claimant's job duties when there is no record evidence regarding those duties. More specifically, relator contends that the magistrate inappropriately assumed that the commission was aware of claimant's job duties and presumed the regularity of the proceedings. In our view, this objection presents a reworked version of the argument relator made in its first objection, to wit: that the commission must explain in detail the claimant's job duties and how those duties render the claimant's disability in excess of normal for the particular loss. We have already rejected that argument as being without support in statutory law or binding precedent. Accordingly, the third objection is overruled. *Page 6 
 {¶ 12} Having undertaken a review of relator's objections and the memoranda in opposition thereto, considered the arguments of all of the parties, and independently appraised the evidence, we overrule relator's objections, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
 McGRATH, P.J., and KLINE, J., concur.
KLINE, J., of the Fourth Appellate District, sitting by assignment of the Tenth Appellate District. *Page 7 
 APPENDIX A MAGISTRATE`S DECISION IN MANDAMUS {¶ 13} Relator, Employee Leasing Services, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted respondent Francis Amissah ("claimant") an award for the loss of his left hand, pursuant to R.C. 4123.57(B), based upon the finding that claimant had suffered the loss of two or more *Page 8 
fingers by ankylosis and that the nature of his employment as a laborer exceeded the normal handicap or disability resulting from the loss of those fingers without sufficient explanation.
Findings of Fact: {¶ 14} 1. Claimant sustained a work-related injury on July 5, 2005, and his claim was originally allowed for "left fifth finger open wound with tendon; crushing injury left fifth finger; dermatitis left." In a hearing before a staff hearing officer ("SHO") on December 18, 2007, claimant's claim was additionally allowed for the following conditions: "frozen left shoulder and frozen left elbow."
 {¶ 15} 2. At the time of his injury, claimant was working as a steel worker making steel irons. Part of his responsibility included putting clamps on the metals which would then be lifted up into the air and lowered into position. A large piece of metal was dropped onto his hand and remained there for between three and five minutes before it was removed.
 {¶ 16} 3. Claimant filed a motion seeking a scheduled loss award under R.C. 4123.57(B) for the loss of his left fourth and fifth fingers by way of actual loss and/or loss of use. Further, claimant requested consideration be given for loss of left hand based upon the fact that his loss of two or more fingers in this particular industry exceeds a normal handicap. Claimant's motion was supported by the reports of Richard M. Ward, M.D., Naomi Waldbaum, M.D., and Ronald J. Bloomfield, M.D.
 {¶ 17} 4. In his July 14, 2006 report, Dr. Ward stated:
 He * * * is fortunately right handed. On examination he has a protective posture; he holds his left wrist with his right hand and keeps his left hand close to his body. He has extreme *Page 9 
hypersensitivity throughout the left hand. He has almost no ability to move any of the joints in his left hand, including his wrist, the MP and the IP joints.
 Based on the history and my examination, I believe he was injured on 7-5-05. As a result of that injury he has the allowances of open wound left 5th finger with tendon, crushing injury left 5th finger, dermatitis NOS-left, RSD upper limb-left 4 finger and RSD upper limb-left 5th
finger. The significance is that because of the severe sympathetic dystrophy he is unable to use his left hand for any type of activity.
 Therefore, this equates to a total loss of use of his left hand.
 {¶ 18} 5. In her July 19, 2006 report, Dr. Waldbaum stated:
 Mr. Amissah was working for a steel company making steel irons. He would put clamps on the metals, and then they would be lifted up into the air and lowered into position. He was working early in the morning. It was very dusty, and a coworker dropped the piece of metal onto his hand. It was very noisy in the factory, and no one heard him screaming for over five minutes. Then someone came and lifted the iron off his hand. He was taken to the hospital immediately. He has not returned to employment.
 * * *
 Mr. Amissah is an early middle-aged, medically healthy, previously fit, strong male who had an unusual injury when a large, heavy piece of steel was dropped onto his left hand. It was a crush-type injury, and it took over five minutes before the pressure was released. He was taken to the emergency room, and at that time, from the accompanying documentation, it appears that the feeling was that he had only injured his left fifth finger and required a surgery to reinforce a tendon. For some reason, the client appears to have had some gaps in followup, and in the interim he has developed a severe reflex sympathetic dystrophy/complex regional pain disorder (CRPD) involving the whole hand and, in fact, the whole left upper extremity, and now presents with a frozen shoulder, a frozen elbow joint, and total lack of mobility at the wrist and all the fingers with a claw hand. The client is in severe pain and does not appear to be on appropriate pain *Page 10 
medication. He walks around supporting his left upper extremity with his right upper extremity, holding it in close adduction with flexion of the elbow and immobility of the wrist and fingers.
 * * *
 This client will be unable to return to his prior position of employment neither now nor in the future, as this involved the usage of both upper extremities, and I doubt very much whether this client will be able to get back full use of his left upper extremity.
 * * *
 At this point in time, the client is unable to perform any work-related activity due to severe pain and disfunction [sic] of his left upper extremity.
 {¶ 19} 6. Dr. Bloomfield conducted a physician review and, in his October 8, 2006 report, stated:
 Mr. Amissah suffered a simple crush injury to the 5th digit of his left hand but unfortunately, has suffered severe nerve damage that has affected his entire left hand. Multiple examiners have noted him to have no use of his left hand. He has loss of left 4th
and 5th fingers and marked reduction in the use of the rest of his left hand. In conclusion, it is my medical opinion that due to his RSD in the 4th and 5th digits of the left hand, he has lost ability to use these digits. This loss has led him to be unable to use his left hand in the workplace. The loss of these two fingers on the left hand has rendered him completely incapable of performing his job duties in the steel industry making steel irons. He has worked as a laborer and is now unable to use his left hand. His loss is profound and does represent a loss in excess of the normal handicap.
 {¶ 20} 7. A hearing was held before an SHO on December 18, 2007 and resulted in an order granting claimant's request for scheduled loss of use of his hand. In making that award, the SHO stated: *Page 11 
 The C-86 filed 06/15/2007 and 09/08/2007 request for scheduled loss of use of the left 4th and 5th fingers is granted. The Staff Hearing Officer finds that a total loss of use of the left hand is awarded per R.C. 4123.57. The Staff Hearing Officer finds the claimant has two or more fingers with total stiffness of (ankylosis) and finds this ankylosis has been sustained due to this 07/05/2005 industrial injury. The Staff Hearing Officer awards a total loss of use via ankylosis for the left hand due to the ankylosis of these fingers and the nature of the claimant's work as a laborer. The Staff Hearing Officer awards 175 weeks of compensation as of 06/24/2007 date of Dr. Richardson's report. The Staff Hearing Officer also relies on Dr. Richardson's 06/27/2007 and 09/11/2007 report[s].
 {¶ 21} 8. As noted, the SHO relied upon three reports from Lynn Richardson, D.O. In her June 24, 2007 report, Dr. Richardson stated:
 I have reviewed the claim file and accept the objective findings of the examining physicians. * * * A hand therapy note in October of 2005 noted severe deformity of all fingers on the left hand, ankylosis, pain and flexion contractures of his fingers. * * *
 An independent evaluation by Dr. Naomi Waldbaum on 6/19/06 revealed a physical exam of left forearm atrophy, clawing of the IP and DIP joints and a left shoulder droop.* * *
 A C-86 was submitted for scheduled loss of the 4th and 5th digist [sic] on the left by way of ankylosis or contractures.
 Discussion:
 Mr. Amissah had his left hand crushed by steel in July of 2005. His fifth finger was surgically repaired and there was a delay in suture removal. A hand therapist in October of 2005 noted finger contractures. Since that time, a surgeon, pain specialist and independent evaluator noted left hand severe contractures, ankylosis, intractable pain and an inability to use his digits. The functional loss of digits 4 and 5 on his left hand is well documented. *Page 12 
 Conclusion:
 With a reasonable degree of medical probability the requested conditions of "scheduled loss of the left 4th and 5th fingers by way of loss of use by ankylosis and or contrac-tures" is supported by the medical evidence and causally related via a flow through mechanism to the industrial injury on 7/5/05.
 {¶ 22} 9. In her June 27, 2007 report, Dr. Richardson stated:
 I have previously reviewed this claim file on 6/24/07 and opined that the scheduled loss of the left 4th and 5th
fingers by way of loss of use by ankylosis and contractures was supported by the medical evidence. * * *
 Mr. Amissah has participated in at least 18 weeks of physical therapy including electrical stimulation, contrast baths and attempted ROM. * * *
 DISCUSSION:
 Ms. [sic] Amissah crushed his hand worst at digits 4 and 5 on 7/5/05. He has advanced trophic changes described by many physicians and his physical therapist. Due to his RDS [sic] he has developed a frozen shoulder and elbow. These are reasonable consequences to his pain inhibited ability to move his left shoulder or elbow. * * *
 {¶ 23} 10. Dr. Richardson prepared an addendum to her June 24, 2007 report on September 11, 2007, and stated:
 I opined that the condition of scheduled loss of the 4th and 5th
fingers by way of ankylosis and contractures was supported by the medical evidence. Mr. Amissah has contractures, ankylosis and reflex sympathetic dystrophy of these digits. They are completely non-functional. The loss is a total loss.
 {¶ 24} 11. Relator's appeal was refused by order of the commission mailed January 26, 2008.
 {¶ 25} 12. Thereafter, relator filed the instant mandamus action in this court. *Page 13 
Conclusions of Law: {¶ 26} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 27} In this mandamus action, relator does not challenge the claim allowances. Apparently, litigation is continuing concerning the allowance of additional conditions. The only challenge relator is making at this time is to the commission's award of total loss of use of claimant's left hand because the loss of two or more fingers by ankylosis and the nature of claimant's employment in the course of which he was working at the time of the injury is such that the handicap or disability resulting therefrom exceeds the normal handicap or disability resulting from the loss of use of the fingers. Relator argues that the commission's statement that this award was being made because claimant was a "laborer" is insufficient and that the commission was required to perform a more thorough analysis before reaching that conclusion. For the reasons that follow, *Page 14 
it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.
 {¶ 28} R.C. 4123.57 provides for partial disability compensation and subsection (B) provides for certain scheduled loss awards. In particular, R.C. 4123.57(B) provides, in pertinent part, as follows:
 In cases included in the following schedule the compensation payable per week to the employee is the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code per week and shall continue during the periods provided in the following schedule:
 * * *
 For ankylosis (total stiffness of) or contractures (due to scars or injuries) which makes any of the fingers, thumbs, or parts of either useless, the same number of weeks apply to the members or parts thereof as given for the loss thereof.
 If the claimant has suffered the loss of two or more fingers by amputation or ankylosis and the nature of the claimant's employment in the course of which the claimant was working at the time of the injury or occupational disease is such that the handicap or disability resulting from the loss of fingers, or loss of use of fingers, exceeds the normal handicap or disability resulting from the loss of fingers, or loss of use of fingers, the administrator may take that fact into consideration and increase the award of compensation accordingly, but the award made shall not exceed the amount of compensation for loss of a hand.
 {¶ 29} The statute permits an increased award where a claimant experiences a greater than normal disability from the loss of fingers than other workers would experience due to the nature of the work claimant was performing when injured.
 {¶ 30} In the present case, claimant was working for a steel company making steel irons. He worked as a chainman. Maria Armstrong, M.D., a board certified *Page 15 
physical medicine and rehabilitation doctor, stated that claimant would be unable to return to his former position of employment as follows:
 He can not return to his former position as a steel worker, a chain man for that job needs full use, dexterity and strength of his left upper extremity. He can return to light duty with no working with left hand. There are no sitting, standing or walking limits.
 {¶ 31} Dr. Waldbaum noted that claimant works for a steel company making steel irons and his task involves putting clamps on the metals. There is no evidence in the record that claimant performed any supervisory roles; instead, he was a physical laborer. The word "laborer" is defined in Merriam-Webster's Collegiate Dictionary (11 Ed.Rev. 2005) 695 as "a person who does unskilled physical work for wages."
 {¶ 32} In concluding that claimant's loss exceeded the normal handicap or disability resulting from such loss, the commission granted claimant a loss of hand award on the basis that claimant was a laborer. Relator argues that the commission was required to go into more detail concerning claimant's job duties before increasing his award. Relator cites three cases in support of its argument; however, none of those cases require the commission to perform any specific type of analysis of the nature of the claimant's employment and if the loss of use exceeds the normal handicap or disability.
 {¶ 33} Specifically, relator cites Hudson v. Tomkins Industries
(1977), 118 Ohio App.3d 131. In Hudson, the commission had denied the claimant's request for additional compensation for the loss of the amputation of his fingers under R.C. 4123.57(B). Instead of filing a mandamus action, the claimant filed a complaint appealing the ruling to the Montgomery County Court of Common Pleas. That court *Page 16 
held that the common pleas court lacked subject-matter jurisdiction to consider the appeal which concerned the extent of the claimant's disability, and not his right to participate in the compensation fund. Within the body of the Hudson case are excerpts from the various orders including the order of the commission denying the claimant's request for an additional award. In denying the request, the commission indicated that it had reviewed the claimant's job duties, videotaped evidence, and the report of Dr. Cunningham who found that the claimant was able to return to his former position of employment as a punch press operator. On that basis, the commission concluded that the claimant's handicap or disability did not exceed the normal handicap or disability due to the nature of his employment. Although this excerpt from the commission's order is included in the Hudson decision, nothing in that decision requires that the commission provide any specific analysis as relator suggests.
 {¶ 34} Relator also cites this court's decision in State ex rel.Morgan v. Superior Fibers, Inc., Franklin App. No. 02AP-20, 2002-Ohio-4550. In that case, the claimant had suffered the loss of his third, fourth and fifth fingers and requested an increased award under R.C. 4123.57(B). In denying that request, the commission noted that the claimant was still performing the same job he was performing at the time he was injured. As such, the commission determined that he did not prove that his problem exceeded the normal problems encountered by someone with several amputations. In affirming its magistrate, this court found that the commission had not abused its discretion in denying the additional award for loss of hand. Again, nothing in the Morgan decision sets forth any specific required analysis from the commission. *Page 17 
 {¶ 35} Lastly, relator cites State ex rel. Interstate Brands Corp. v.Limon, Franklin App. No. 02AP-259, 2002-Ohio-6066. In that case, the claimant's left index and middle fingers were amputated and the claimant ultimately experienced a substantial loss of function of his ring and little fingers as well. The claimant requested an additional award for the loss of his hand under R.C. 4123.57(B) and the commission granted that award in spite of the fact that the claimant was still working in the same position he was working in at the time of his injury, a machine repair supervisor. The commission relied on the claimant's testimony that he had routinely worked with tools before his injury and could not do so now, along with the medical evidence that his left hand was essentially useless, in making the award. The employer filed a mandamus action which this court denied upon finding that the commission did not abuse its discretion. However, again, nothing in that decision sets out any specific requirement concerning the type of analysis or the extent of detail of the commission's explanation.
 {¶ 36} In this case, the record indicates that claimant worked as a laborer in a steel company. Laborers perform unskilled physical labor. Claimant worked as a chainman and put clamps on the metals. The commission specifically cited the reports of Dr. Richardson who stated that claimant could not return to his former position of employment and that, at this time, he was unable to perform any type of work. Further, she noted that he was currently unable to participate in any vocational rehabilitation due to pain.
 {¶ 37} Because the commission did not go into greater detail concerning claimant's specific job duties, relator apparently wants this court to conclude that the commission was not aware of claimant's job duties as a steel worker. The *Page 18 
commission's file contains evidence of claimant's job duties. He worked as a chainman putting clamps on metals. Further, claimant has not been able to return to his job. The evidence demonstrates that claimant needs to be able to use both hands and arms in order to perform the job duties he was performing at the time he was injured. Being unfamiliar with jobs in the steel industry, I do not know the extent of claimant's job duties. However, the commission deals with claimants involved in all types of jobs. There is no reason to suspect that the commission was unaware of claimant's job responsibilities. Further, claimant attended the hearing. The hearing officer may have inquired about claimant's job duties. However, there is no transcript. Given the presumption of regularity, relator has not presented evidence that the commission was not aware of the job duties involved. In this case, any additional explanation by the commission is unnecessary.
 {¶ 38} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in granting claimant an award for the total loss of use of his left hand under R.C. 4123.57(B), and this court should deny relator's request for a writ of mandamus.
 *Page 1